UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


BRIAN BEVAN,

                    Plaintiff,

vs.                                    Case No.  2:03-cv-500-FtM-29SPC


MIKE SCOTT, in his official capacity
as Sheriff of Lee County, Florida[1],
ROD    SHOAP,    individually,    JOHN
MCDOUGALL,   individually,   KENNETH
ERNE,  individually,  MARK  DURLING,
individually,    HARVEY    HUDNALL,
individually,    FRED    BOND,
individually,    DAVE    BONSALL,
individually,   ROSS   DI   PASQUALE,
individually,    SERGEANT   HAMILTON,
individually, RICHARD TRAVIS COWART,
individually,  CLAUDIA  GADD  COWART,
individually,    JACKIE    COWART
individually,    SOUTHWEST    UTILITY
SYSTEMS,    INC.,    a    Florida
corporation,   CHUCK   FUNDERMARK,
individually,  and CHUCK'S  WHISKEY
CREEK  SERVICE,  INC.,  a  Florida
corporation,

                    Defendants.
_____/


**OPINION AND ORDER**


_____This matter comes before the Court on the following summary

judgment motions:   (1) Law Enforcement Defendants' Motion for

Summary Judgment and Incorporated Memorandum of Law[2] (Doc. #142),

---

[1]Current Sheriff Mike Scott is substituted for the former
sheriff pursuant to Fed. R. Civ. P. 25(d)(1).

[2]The Law Enforcement Defendants include Rod Shoap, John
McDougall, Kenneth Erne, Mark Durling, Harvey Hudnall, Fred Bond,
                                              (continued...)

to which a Response (Doc. #165) was filed; (2) Defendants Chuck Fundermark and Chuck's Whiskey Creek Service, Inc.'s Motion for Summary Judgment and Memorandum of Law (Doc. #146), to which a Response (Doc. #163) was filed; (3) Defendants Claudia Cowart's and Richard Cowart's Motion for Summary Judgment with Supporting Memorandum of Law (Doc. #161), to which a Response (Doc. #179) was filed; and (4) Plaintiff' Motion for Summary Judgment (Doc. #147) and Memorandum of Law (Doc. #148) to which Responses (Docs. #164, 170) were filed.  Also before the Court is Defendants Claudia Cowart and Richard Cowart's Objection to Untimely Filing of Plaintiff's Response and Supporting Affidavits (Doc. #188), to which a Response (Doc. #193) was filed.

## I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue at to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law.  Id.  The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or

---

[2](...continued)
Dave Bonsall, Ross Di Pasquale, and Brad Hamilton.

affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial motion. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003).

## II.

The origin of this action is a real property boundary dispute which began nearly a quarter century ago. In 1981, Brian and Jane Bevan (the Bevans) acquired property on Masanabo Lane. In 1983 Robyn Graves (Graves) filed a state court quiet title action against the Bevans, and the Bevans filed a counterclaim against Graves to quiet and confirm title.[3] On July 9, 1987, after a ten-

---

[3] The action styled as Graves v. Bevan, Case No. 83-3955 CA-
(continued...)

day jury trial, a Final Judgment (the Final Judgment) was entered quieting title in favor of Graves.  The Bevans were required to execute a quit claim deed conveying certain real property (the Property) to Graves, and the failure to do so within twenty days resulted in the Final Judgment operating as the conveyance.  The Final Judgment also ordered that certain deeds be reformed, and the Bevans were ordered to take nothing on their counterclaim against Graves.  The Final Judgment also recognized a non-exclusive roadway easement to the Property adjacent to the Bevans' property.  The Final Judgment was affirmed on appeal, although an award of attorney fees to Graves was reversed.  Bevan v. Graves, 539 So. 2d 485 (Fla. 2d DCA 1989).

In 1991 Graves sold Richard and Claudia Cowart (the Cowarts), then husband and wife, property on Logan Lane, including the Property subject to the 1987 Final Judgment.  The Bevans continued to assert proprietary rights to the Property and to assert that the Cowarts did not own the Property.  Sometime prior to 1992, Brian Bevan erected a gate[4] on a portion of property to which he had an

---

[3](...continued)
WJN, in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida, is hereinafter referred to as the "Graves/Bevans Case."

[4]As viewed in the videos submitted by the parties, the gate had a mailbox attached to it.  The Court includes the mailbox as part of the gate whenever reference is made to the "gate."

easement and placed a trailer[5] on a portion of the Property which the Cowarts owned by quit claim deed pursuant to the Final Judgment.   The Cowarts requested that plaintiff remove the gate from the easement parcel and the trailer from the real property.

In October 1992, after plaintiff refused to remove these items, the Cowarts initiated an action in state court against the Bevans seeking temporary and permanent injunctive relief, including removal of a trailer and ceasing interference with their Property.[6] On April 9, 1993 (*nunc pro tunc* May 4, 1993), a state Circuit Court Judge entered a Temporary Restraining Order (TRO) in the 1992 State Case which, among other things, temporarily enjoined the Cowarts from the use of the Masanabo Lane property and enjoined the Bevans from use of the Logan Lane property.   The TRO provided that "this Order may be enforced by any police agency within the State of Florida, including the Lee County Sheriff's Department, or any other local or state policy agency with jurisdiction over the parties physical location."   In August 2000, the 1992 State Court Case was voluntarily dismissed by the Cowarts.

On December 29, 1997, the Bevans filed suit against the Cowarts and Southwest Utility Systems, Inc. ("Southwest Utility"), a Florida corporation owned by Richard Cowart, alleging a right to

---

[5]The trailer contained Plaintiff's personal property, and the Court includes the contents when it references the "trailer."

[6]Cowart v. Bevan, Case No. 92-8680-CA-WCM (Fla. Cir. Ct. filed Oct. 30, 1992) is hereinafter referred to as the "1992 State Case."

access to a sewer cleanout on the Cowarts' property.[7]  The Cowarts filed a counterclaim seeking the same relief as in the 1992 State Case, and as noted earlier ultimately voluntarily dismissed the 1992 State Case.

On June 9, 1999, a state Circuit Court judge entered an Order Dissolving Temporary Restraining Order in the 1992 State Case which dissolved the Temporary Restraining Order dated April 9, 1993 in its entirety.  The Order Dissolving Temporary Restraining Order further stated that the Court had not ruled on the Cowarts' right to use lands described as the South Parcel, had not determined the physical location of the South Parcel, and had not determined the location of the easement.  The Order Dissolving Temporary Restraining Order did not adversely affect the Cowarts' title to the Property and the easement rights under the 1987 Final Judgment, but it also did not affirmatively authorize the Cowarts to remove the gate or trailer from the Property.

On August 20, 1999, the Cowarts' attorney sent a certified letter to plaintiff which stated in full:

> Please be advised that my clients wish to make use of their entire parcel and accordingly make use of and traverse Massanabo Lane.  Currently, you have caused to be erected a fence and have abandoned property that obstructs the use of a portion of my clients' property.  Please be advised that unless all obstructions are removed within ten (10) days from the date of this letter, my clients will have those obstructions removed.

---

[7]Bevan v. Cowart, Case No. 97-9879 CA LG (Fla. Cir. Ct. filed Dec. 29, 1997) is hereinafter referred to as the "1997 State Case."

> My clients do not wish to engage in any sort of confrontation.  Rather, they simply wish to make use of their land.  While I realize that you currently contest the validity of Judge Thompson's Order and the corresponding property lines, the current status of all judicial proceedings does not preclude my clients from the use of all their lands and right to use Massanabo. Please govern yourself accordingly.

On August 30, 1999, plaintiff through counsel filed a Petition for Temporary Injunction in the 1997 State Case asserting that the Cowart's through counsel had threatened to remove personal property and vegetation belonging to Bevan, that a temporary injunction was needed to prevent this action, and that there was a potential for physical confrontation.  Also on August 30, Bevan filed a *pro se* Petition for Temporary Injunction in the 1992 State Case based upon the same letter from the Cowarts' attorney and making the same allegations, including the potential for physical confrontation.

On the morning of August 31, 1999, Richard Cowart directed Southwest Utility employees to remove the gate with heavy equipment and caused the trailer to be towed by Chuck's Whiskey Creek Service, Inc. ("Chuck's Whiskey Creek") and Chuck Fundermark (Fundermark).  The gate and some citrus trees were destroyed in the process.  The Cowarts called the Lee County Sheriff Office for deputies to maintain the peace, and defendants Hamilton, Di Pasquale, Bond, Hudnall, and Erne arrived and were present during

the removal.[8]  Defendants Shoap, McDougall, Durling, Bonsall, and Claudia Cowart were not present.

On August 31, 1999, a Lee County Circuit Court Judge heard arguments on the request for a temporary injunction in the 1992 State Case.  The Circuit Judge entered an Order of Temporary Injunction directing, among other things, that the Cowarts and their employees and agents cease and desist from clearing the property described in their quit claim deed, that the property be maintained in its status quo condition as of 12:30 p.m. on August 31, 1999, and that neither party park vehicles, make plantings, or place other personal property on the property.

On July 10, 2001, Bevan filed a Second Amended Complaint in the 1997 State Case to include recovery of damages for the August 31, 1999 destruction of his personal property.  Bevan set forth claims for trespass for the Cowarts putting a fence and building on the easement; an injunction to remove the fence and a building; an injunction precluding entry on Masanabo Lane; quiet title/ejectment from the easement and Property; rescission of the Cowarts title based upon fraud; slander of title; and fraud.  The 1997 State Case remains pending.

On August 29, 2003, plaintiff filed this federal action based on the August 31, 1999 activity, and on February 4, 2004, filed an

---

[8]Additional facts concerning the August 31 events are set forth later in more detail as necessary to resolve the individual motions.

eight-count Amended Complaint (Doc. #89).  The Court subsequently dismissed several claims pursuant to various motions to dismiss[9]. The remaining claims are as follows: (1) Counts I and II: § 1983 claims for violation of plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments based on the destruction of property without compensation and without procedural due process; (2) Count III: a § 1983 claim against the non-law enforcement officers for unlawful seizure based upon the removal, towing, and impoundment of plaintiff's trailer; (3) Count IV: a state law assault claim against the Cowarts, Southwest Utility, Fundermark, Chuck's Whiskey Creek, and the law enforcement defendants; (4) Count VI: a state law claim for negligence as to the non-law enforcement defendants; (5) Count VII:  § 1983 claims against the law enforcement officers based upon an unlawful search and seizure without probable cause, failure to inform plaintiff of the nature and cause of the accusations against him, and denial of due process and equal protection; and (6) Count VIII:  a "destruction of evidence" claim against George Mitar.

---

[9]The Court's June 21, 2004 Order (Doc. #103) dismissed Count IV with prejudice as to defendant Shoap [now Scott] in his official capacity, Count V with prejudice as to the law enforcement defendants in their individual capacities and without prejudice against defendant Shoap [now Scott] in his official capacity, and Count VIII with prejudice as to defendant Shoap [now Scott] in his official capacity.

**III.**

The Cowarts assert that they are entitled to a judgment as a matter of law because Bevan's claims are barred by the doctrines of res judicata and collateral estoppel in light of the 1987 Final Judgment quieting title in favor of Graves, their predecessor in title.   The Court disagrees.

The Full Faith and Credit Clause of the United States Constitution, U.S. Const. Art. IV, §1, requires the Court to apply the State's law of collateral estoppel and res judicata to civil rights actions arising under 42 U.S.C. § 1983.  Allen v. McCurry, 449 U.S. 90, 103-05 (1980); Brown v. City of Hialeah, 30 F.3d 1433, 1437 (11th Cir. 1994).  Res judicata generally bars relitigation of matters that were litigated or could have been litigated in an earlier suit.  Nevada v. United States, 463 U.S. 110, 130 (1983); Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1187 (11th Cir. 2003).  Under Florida law, res judicata requires (1) the identity of the thing sued for, (2) the identity of the cause of action, (3) the identity of the persons and parties to the action, and (4) the identity of the quality or capacity of the person for or against whom the claim is made.  Saboff v. St. John's River Mgt. Dist., 200 F.3d 1356, 1360 (11th Cir.), cert. denied, 531 U.S. 823 (2000).  "Under Florida law, collateral estoppel applies if (1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction."  Quinn v. Monroe County, 330 F.3d

-10-

1320, 1329 (11th Cir. 2003). <u>See also</u> <u>Gentile v. Bauder</u>, 718 So. 2d 781, 783 (Fla. 1998)(citation omitted) ("Under Florida law, collateral estoppel, or issue preclusion, applies when the identical issue has been litigated between the same parties or their privies."); <u>Department of HRS v. B.J.M.</u>, 656 So. 2d 906, 910 (Fla. 1995); <u>GLA and Assocs., Inc. v. City of Boca Raton</u>, 855 So. 2d 278, 281 (Fla. 4th DCA 2003). A federal court will give preclusive effect to a judgment of a state court if the courts of the state from which the judgment was rendered would do so and if the litigants had a full and fair opportunity to litigate their claims and the prior state proceedings otherwise satisfied the applicable requirements of due process. <u>Urfirer v. Cornfeld</u>, 408 F.3d 710, 717-18 (11th Cir. 2005); <u>Quinn</u>, 330 F.3d at 1239.

This federal case involves the events of August 31, 1999, and the alleged liability of defendants for activities on that date. Nothing about the Graves/Bevans Case or the 1987 Final Judgment decided or could have decided the legal claims or issues raised by the self-help events of some twelve years later. The § 1983 claims and the state law claims arising from the August 31, 1999 events were not part of the same cause of action as the 1987 quiet title action and were not decided in that state court proceeding, and therefore Bevan's current federal claims are not precluded by collateral estoppel or res judicata. <u>E.g.</u>, <u>Webb v. State of Ala.</u>, 850 F.2d 1518, 1520-22 (11th Cir. 1988).

**IV.**

-11-

The Court will first discuss the § 1983 claims - Counts I, II III, and VII - since those are the only federal claims in the Amended Complaint.

Title 42 U.S.C. § 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To establish a claim under 42 U.S.C. § 1983, plaintiffs must allege and ultimately prove that (1) defendant deprived them of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir.), reh'g and reh'g en banc denied, 277 F.3d 1381 (11th Cir. 2001). In addition, plaintiffs must allege and establish an affirmative causal connection between the defendants' conduct and the constitutional deprivation. Troupe v. Sarasota County, Fla., ___ F.3d ___, 2005 WL 1813304, at *3 (11th Cir. Aug. 3, 2005); Marsh v. Butler County, 268 F.3d 1014, 1059 (11th Cir. 2001). Section 1983 is not itself a source of substantive rights, but merely provides a procedural mechanism for vindicating federal rights created elsewhere. "One cannot go into court and claim a 'violation of § 1983' – § 1983 by itself does not protect anyone against anything." Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002) (quoting Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979)). See also Skinner v. City of Miami, Fla., 62 F.3d 344, 347 (11th Cir. 1995).

In one fashion or another, all defendants argue that plaintiff was not deprived of a right secured under the United States Constitution or federal law, and that any such deprivation did not occur under color of state law.  The Court will first address the "under color of state law" requirement of a § 1983 action, also referred to as "state action."

**A.**

A primary issue is whether the self-help ejection orchestrated by the Cowarts can be considered to have been done under the color of state law.  A § 1983 claim requires plaintiff to show that the conduct was committed by a person acting under the color of state law at the relevant time.  Loren v. Sasser, 309 F.3d 1296, 1303 (11th Cir. 2002), cert. denied Newbold v. Sasser, 538 U.S. 930, 1057 (2003)).  "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."  Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1276-1277 (11th Cir. 2003) (quoting American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999) (internal punctuation and citations omitted)).

A private person may be viewed as a state actor under certain circumstances.  Focus on Family, 344 F.3d at 1277 (recognizing three tests used to determine whether person was state actor).  Action is considered to be under color of state law if there is

such a close nexus between the State and the challenged action that seemingly private behavior may be fairly attributed to the State. Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001). The Supreme Court has stated that "[w]hat is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity." Brentwood Acad., 531 U.S. at 295. The Supreme Court further noted that "no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, . . . ." Id. Rather, the Supreme Court's prior decisions have "identified a host of facts that can bear on the fairness of such an attribution." Id. at 296. As examples of circumstances where state action had been found, the Court pointed to situations where the challenged activity resulted from the State's exercise of "coercive power;" where the State provided "significant encouragement, either overt or covert;" where a private actor operated as a "willful participant in joint activity with the State or its agents;" where the nominally private entity was controlled by an agency of the State; where the nominally private entity had been delegated a public function by the State; and where the private entity was entwined with governmental policies or when government was entwined with the entity's management or control. Id. (citations omitted). The determination of whether there is action under color of state law is a "necessarily fact-bound inquiry." Id. at 298 (citation omitted). It is, however, a rare circumstance where a private

party can be viewed as a state actor for § 1983 purposes.  Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001).

At the time of the August 31, 1999 events, it was an established fact that the Cowarts had purchased the Property, including the non-exclusive access easement.  Bevan constructed a gate across the easement and placed his trailer on the Property, asserting a legal right to do so despite the Final Judgment.  The Cowarts caused an attorney to send the ten-day letter to Bevan and arranged for the self-help ejection of the trailer and gate from the Property and easement utilizing their own personnel.  The Cowarts called the Sheriff's Office and asked deputies to come to the scene to stand by and keep the peace.  Bevan and his attorney also recognized the potential for physical confrontation in their requests for a temporary injunction form the state court.  Richard Cowart was at the scene and supervised the activities of the persons doing the actual work.  The Court finds that the activities up to this point did not satisfy the "under color of state law" requirement for a § 1983 action.

The issue becomes whether the presence or conduct of the law enforcement officers converted this private self-help conduct into action performed under color of state law.  This turns on the level of involvement of the law enforcement officers.  If the officers' level of involvement was nothing more than mere presence to prevent a breach of the peace, the required state action is lacking.  Menchaca v. Chrysler Credit Corp., 613 F.2d 507 (5th Cir.), cert.

denied, 449 U.S. 953 (1980); <u>Booker v. City of Atlanta</u>, 776 F.2d 272 (11th Cir. 1985); <u>Cofield v. Randolph County Comm.</u>, 90 F.3d 468, 471-72 (11th Cir. 1996).  State action might be present if an officer facilitates an eviction.  <u>Booker</u>, 776 F.2d at 274; <u>Menchaca</u>, 613 F.2d at 513; <u>Cofield</u>, 90 F.3d at 471.  <u>Cofield</u> found insufficient facts to support state action where the repossession was complete before any contact with deputies.  On the other extreme, deputy sheriffs who assist in a forcible eviction that is patently unlawful are sufficiently involved so as to create state action.  <u>Soldal v. Cook County, Ill.</u>, 506 U.S. 56 (1992).

More recent appellate decisions have cited these and other decisions as standing for the following principle: "officers are not state actors during a private repossession if they act only to keep the peace, but they cross the line if they affirmatively intervene to aid the repossessor." <u>Marcus v. McCollum</u>, 394 F.3d 813, 818 (10th Cir. 2004).  <u>See also</u> <u>Barrett v. Harwood</u>, 189 F.3d 297 (2d Cir. 1999).  "The key inquiry, of course, is whether the officer's conduct was designed to keep the peace or to aid in the repossession." <u>Marcus</u>, 394 F.3d at 817 n.3.

If the allegations in the Amended Complaint (Doc. #89) and Plaintiff's Response (Doc. #165) - that the deputies ordered the seizures and destruction of his property - were supported by evidence, the state action element would clearly be satisfied.  However, there is no factual evidence that the deputies ordered any actions by the private defendants.  The deputies have filed

Affidavits establishing that none ordered such conduct, and the Cowarts have filed Affidavits stating that they made the decision to remove the items upon advice of counsel.   Bevan's largely conclusory affidavit does not state facts to the contrary as to these officers.

Plaintiff's Affidavit (Doc. #186) states that the videotape made by the Sheriff's Office shows Commander Erne "issuing instructions and directing the actual destruction and destroying of the Plaintiff's Property."  The Court has personally reviewed the videotape made by the Sheriff's Office and the videotape made by Plaintiff.  There is no evidence supporting plaintiff's assertion that Commander Erne gave instructions or directions to destroy plaintiff's chattel.  In fact, on the videotapes Commander Erne calmly spoke with plaintiff and repeatedly stated that he and the other deputies were present to keep the peace.  Commander Erne then retreated to his vehicle.

Additionally, Sgt. Hamilton, surrounded by plaintiff and Cowart's employees, is shown telling Bevan that either Bevan removes the mailbox from the gate or "we'll remove it and place the mailbox on your property." (Doc. #148, Time: 4:21-4:40). There is no evidence which shows Sgt. Hamilton directing or instructing the private actors to destroy plaintiff's property; indeed, Sgt. Hamilton is clearly trying to prevent the mailbox from being destroyed by Cowart's personnel when they removed the gate.  Under

the circumstances, the evidence shows nothing more than Sgt. Hamilton's attempt to maintain the peace on the site. Thus, the Sheriff's videotape and plaintiff's videotape both contradict plaintiff's assertions and do not support his claim on summary judgment.

While there is no factual evidence that the deputies ordered the removal or destruction of plaintiff's property, their conduct must be examined to determine if it nonetheless satisfies the state action requirement.

The Affidavit of Rodney Shoap (Doc. #142, Exhibit 5) establishes that he was the Major of Special Operations for the Lee County Sheriff's Office on August 31, 1999; that he was the Sheriff by the time this federal suit was filed; that he was not present at the scene of the property disputed by plaintiff and the Cowarts on August 31, 1999; that he had no prior knowledge that the Cowarts intended to clear the property on August 31, 1999; that he was not involved in any way in the events that took place on August 31, 1999; and that he has no personal knowledge of the events of August 31, 1999, between plaintiff and the Cowarts. These facts are not disputed by plaintiff. Therefore, the conduct of former Sheriff Shoap cannot establish state action in this case.

The Affidavit of Mark Durling (Doc. #142, Exhibit 7) establishes that he was the Chief of the Law Enforcement Bureau of the Lee County Sheriff's Office on August 31, 1999; that he was not present at the scene of the property disputed by plaintiff and the

-18-

Cowarts on August 31, 1999; that he had no prior knowledge that the Cowarts intended to clear the property on August 31, 1999; that he was not involved in any way in the events that took place on August 31, 1999; and that he has no personal knowledge of the events of August 31, 1999, between plaintiff and the Cowarts.  These facts are not disputed by plaintiff.  Therefore, the conduct of Chief Durling cannot establish state action in this case.

The Affidavit of David Bonsall (Doc. #142, Exhibit 8) establishes that he was a Lieutenant Colonel with the Lee County Sheriff's Office on August 31, 1999; that he was not present at the scene of the property disputed by plaintiff and the Cowarts on August 31, 1999; that he had no prior knowledge that the Cowarts intended to clear the property on August 31, 1999; that he was not involved in any way in the events that took place on August 31, 1999; and that he has no personal knowledge of the events of August 31, 1999, between plaintiff and the Cowarts.  These facts are not disputed by plaintiff.  Therefore, the conduct of Chief Durling cannot establish state action in this case.

The Lee County Sheriff deputies who were present during the August 31, 1999, events have also submitted affidavits.  The Affidavit of Sgt. Brad Hamilton (Doc. #142, Exhibit 1) states that he and the other officers were called by the Cowarts to the Property, and the Cowarts "explained that they had a court order permitting them to reclaim their land and remove all encumbrances, including a trailer, a fence, a mailbox and citrus trees."  Sgt.

Hamilton "was aware of said order and believed it to be authentic and accurate" but did not make or retain a copy of the order.  The Cowarts showed Sgt. Hamilton "an Order authorizing them to destroy and or remove Mr. Bevan's property and asked that the Lee County Sheriff's Office stand by to keep the peace in the event violence broke out."  The officers who responded to the scene stood by as the Cowarts enlisted the help of others to remove the trailer, fence, mailbox and citrus trees, and did not participate in the removal or destruction of the property.  The sole purpose of the officers' presence was to keep the peace between the Bevans and the Cowarts; the officers did not threaten plaintiff with physical violence or to arrest plaintiff other than say they would arrest Plaintiff if he committed violence against the individuals at the scene that day.  An officer also told plaintiff he should move his vehicle so the Cowarts would not destroy or tow it.

The Affidavit of Kenneth Erne (Doc. #142, Exhibit 2) states that on August 31, 1999, he was the Sheriff's Office District Commander for the West District of Lee County.  The content of the Affidavit is substantially similar to that of Sgt. Hamilton, except that he was not shown a copy of the court order authorizing destruction or removal of the property, rather the order was shown to Sgt. Hamilton.

The Affidavit of Detective Ross Di Pasquale (Doc. #142, Exhibit 3) states that on August 31, 1999, he was a detective for the Sheriff's Office.  The content of the Affidavit is

substantially similar to that of Sgt. Hamilton, except that Detective Di Pasquale  states that either the Cowarts or a fellow officer made him aware of an Order signed by a Lee County Circuit Judge dissolving a Temporary Restraining Order, and that as a result of this Order Mr. Bevan (this is obviously a typographical error which should have referred to the Cowarts) asked the Sheriff's Office to stand by and keep the peace.

The Affidavit of Harvey Hudnall (Doc. #142, Exhibit 4) states that on August 31, 1999, he was a part-time deputy with the Sheriff's Office.  The content of the Affidavit is substantially similar to that of Sgt. Hamilton, except that Deputy Hudnall states that either the Cowarts or a fellow officer made him aware of an Order signed by a Lee County Circuit Judge dissolving a Temporary Restraining Order, and that as a result of this Order Mr. Bevan (again, this is obviously a typographical error which should have referred to the Cowarts) asked the Sheriff's Office to stand by and keep the peace.

Plaintiff submitted affidavits indicating that the law enforcement defendants' participation included filming the event, The Court finds that presence at the location and videotaping the incident does not constitute state action.  E.g., United States v. Behety, 32 F.3d 503, 511 (11th Cir. 1994)(Fourth Amendment generally inapplicable to actions by foreign officials in their own countries enforcing their own laws, even if American officials are present and cooperate in some degree; presence of federal agent and

-21-

videotaping of search does not constitute level of participation necessary to  bring conduct of foreign officials within scope of Fourth Amendment).  Nothing about Deputy Fred Bond videotaping the events aided the Cowarts in their conduct, any more than plaintiff's videotaping did.  The videotapes simply memorialized the events.

The Court finds that the actions of the deputies were not sufficient to constitute state action.  The deputies were called to the scene by the Cowarts to keep the peace, did not participate in the removal of the property, and simply told plaintiff he would be arrested if he became violent.  The deputies on the scene did not cross the line from mere presence to prevent a breach of peace to facilitating an ejectment.  Their conduct did not result in the private ejectment being converted to action under color of state law.

Finally, plaintiff asserts that one of the law enforcement defendants requested a tow truck to remove his trailer.  Plaintiff argues that this is sufficient to constitute state action as to all the law enforcement defendants.  There is no evidence that any of the deputies at the scene requested the tow truck, and plaintiff does not identify any particular deputy as having done so.

However, Chuck Fundermark signed a September 11, 2003 letter, in which he stated that he was on the Lee County Sheriff's Office towing roster, that he responded to a Lee County Sheriff's call to remove a camper trailer, that he removed the trailer "at the order

of the Sheriff," and that if he had refused to remove the trailer he could have lost his rotation business with the Sheriff. (Doc. #31). This is contradicted by the Affidavit of John McDougall (Doc. #142, Exhibit 6), which establishes that he was the Sheriff of Lee County, Florida on August 31, 1999; that he was not present at the scene of the property disputed by plaintiff and the Cowarts on August 31, 1999; that he had no prior knowledge that the Cowarts intended to clear the property on August 31, 1999; that he was not involved in any way in the events that took place on August 31, 1999; and that he had no personal knowledge of the events of August 31, 1999, between plaintiff and the Cowarts.

Viewing the evidence in favor of plaintiff, as the Court must at this stage of the proceedings, the Court finds that the removal of the trailer from the premises upon order of the Sheriff constitutes conduct performed under color of state law[10]. This state action, however, only occurred with regard to the removal of the trailer; the conduct of law enforcement officers prior to that time did not amount to conduct under color of state law, as discussed above.

Plaintiff further argues that the law enforcement defendants and the private defendants conspired to violate plaintiff's

---

[10]This is so even if the Court deems the requests for admissions admitted because plaintiff failed to respond. The deemed-admitted facts that neither Fundermark or Whiskey Creek Service were employees or agents of the Sheriff's Office does not contradict the facts set forth in Fundermark's letter.

constitutional rights, and this conspiracy satisfies the under color of state law requirement as to all of the events of August 31, 1999.  State action can exist if there is a joint venture or a conspiracy between private persons and state actors.  Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1285 (11th Cir. 2002).  Under the facts presented in the summary judgment record, a reasonable jury could only find a conspiracy between the Sheriff and one or more private actors as to removal of the trailer.  Therefore, state action is only established as to the removal of the trailer.

**B.**

The second § 1983 issue is whether any of plaintiff's constitutional rights were violated.  Read liberally, the Amended Complaint asserts that the August 31 conduct violated the following constitutional rights: (1) seizure of property in violation of the Fourth Amendment; (2) taking of property without just compensation in violation of the Fifth Amendment; (3) failure to inform plaintiff of the nature and cause of the accusations against him in violation of the Sixth and Fourteenth Amendments; (4) taking of property without procedural due process in violation of the Fourteenth Amendment; and (5) denial of equal protection of laws in violation of the Fourteenth Amendment.  The Court concludes that the summary judgment facts do not show a violation of any of these constitutional rights.

**(1) Fourth Amendment:**   The Fourth Amendment provides in pertinent part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."   The Fourth Amendment is made applicable to the States by the Fourteenth Amendment, <u>Ker v. California</u>, 374 U.S. 23, 20 (1963), and fully applies in the civil context.   <u>Soldal</u>, 506 U.S. at 66-67 n.11.   A search or seizure by a private party, however, does not implicate the Fourth Amendment unless that party is acting as an instrument or agent of the government.   <u>Walter v. United States</u>, 447 U.S. 649, 656 (1980); <u>Collidge v. New Hampshire</u>, 403 U.S. 443, 487 (1971); <u>Burdeau v. McDowell</u>, 256 U.S. 465, 475-76 (1921).   A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property.   <u>Soldal</u>, 506 U.S. at 61.   A seizure violates the Fourth Amendment only if it is unreasonable.   <u>Id</u>. at 61-62.

As in <u>Soldal</u>, there can be no doubt that the conduct in this case constituted a "seizure" of the gate, trailer and incidental personal property.   It is undisputed that the non-law enforcement defendants physically removed the gate and the trailer and in so doing damaged or destroyed other personal property.   Viewed in the light most favorable to plaintiff, those seizures cannot be within the scope of the Fourth Amendment until the Sheriff ordered Fundermark to remove the trailer.   Up until that point, the events were not being conducted under the color or state law, as discussed

above, and the private actors were not acting as an instrument or agent of the government.

The seizure of the trailer only violates the Fourth Amendment if it is unreasonable, which requires a careful balancing of governmental and private interests. Soldal, 506 U.S. at 71. "[R]easonableness is still the ultimate standard under the Fourth Amendment, which means that numerous seizures of this type will survive constitutional scrutiny." Soldal, 506 U.S. at 71 (internal quotation marks and citation omitted). Booker and Soldal were concerned only with the issue of state action, and do not support theories of liability based on the officers' presence or aid at a self-help ejection. Cofield, 90 F.3d at 472 n.6.

For summary judgment purposes, the Court does not credit the portions of the deputies' affidavits stating there was a court order authorizing the Cowarts to destroy and/or remove Bevan's property. Plaintiff has filed affidavits which assert that no such court order was ever issued by any judge, and the record supports plaintiff on this point. No defendant has produced a court order which authorized the Cowarts to remove or destroy the personal property. The Order Dissolving Temporary Restraining Order clearly does not so provide, and no reasonable officer who read that order could have concluded that a court had authorized the Cowarts' conduct.

The Court finds that the Sheriff's instruction to Fundermark to remove the trailer, in the absence of an authorizing court

order, legal process, or an applicable exception to the warrant
requirement, was unreasonable under the circumstances and therefore
the seizure of the trailer violated the Fourth Amendment.  The
other defendants who, under a view of the facts most favorable to
plaintiff, can be liable for this conduct are the Sheriff (now
Scott) in his official capacity, Richard Cowart, Fundermark, and
Chuck's Whiskey Service.  The Court further finds that the conduct
of all the other defendants was reasonable under the circumstances
and did not violate the Fourth Amendment.  Defendants Shoap,
Durling, Bonsall, and Claudia Cowart were not present at the scene
and there is no basis for personal liability.  Defendants Bond, Di
Pasquale, Erne, Hamilton and Hudnall did not provide any
instructions or directions beyond what was necessary to maintain
the peace at the site and were not involved in the seizure of the
trailer, and consequently did not violate the Fourth Amendment.

   **(2) Fifth Amendment**:  The Amended Complaint also claims that
defendants took plaintiff's property without just compensation in
violation of the Fifth Amendment.  The Fifth Amendment to the
United States Constitution provides that private property shall not
"be taken for public use without just compensation."  U.S. Const.
amend. V, cl. 4. The purpose of this prohibition is to prevent
"Government from forcing some people alone to bear public burdens
which, in all fairness and justice, should be borne by the public
as a whole."  Penn Cent. Transp. Co. v. City of New York, 438 U.S.
104, 123 (1978) (quoting Armstrong v. United States, 364 U.S. 40,

49 (1960)).  Real property, <u>see</u> <u>Lucas v. S.C. Coastal Council</u>, 505 U.S. 1003, 1019 (1992); personal property, <u>see</u> <u>Andrus v. Allard</u>, 444 U.S. 51, 65 (1979); and intangible property, <u>see</u> <u>Ruckelshaus v.</u> <u>Monsanto Co.</u>, 467 U.S. 986, 1003-04 (1984), each may constitute the *res* of a takings claim.  There are no facts in this case which indicate the property was taken for a purported public use.  The context of this case does not give rise to a Fifth Amendment takings claim.  Any such "takings" claim is subsumed in the Fourth Amendment seizure claim discussed above.

**(3) Sixth Amendment**:  The undisputed facts establish that there was no violation of Plaintiff's Sixth Amendment right to be informed of the nature and cause of the accusations against him. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; . . . ."  U.S. Const., amend. VI.  The events of August 31, 1999, were not a criminal prosecution and plaintiff was not an "accused" in connection with those events. Therefore, no Sixth Amendment right exists in the context of this case, and none of the defendants violated plaintiff's Sixth Amendment right.

**(4) Procedural Due Process**:  The Amended Complaint alleges that Plaintiff was deprived of property without procedural due process in violation of his rights under the United States Constitution.  The Fourteenth Amendment to the United States

Constitution explicitly guarantees to each citizen that no State shall "deprive any person of life, liberty, or property, without due process of law...." U.S. Const., amend. XIV, § 1. The same state action continuum as discussed under the Fourth Amendment applies under the procedural due process clause. Barrett, 189 F.3d at 301-303. "Under the Fourteenth Amendment, procedural due process requires notice and a pre-deprivation hearing before property interests are negatively affected by governmental actors." Marcus, 394 F.3d at 818 (citing Fuentes v. Shevin, 407 U.S. 67, 80-82 (1972)). A possessory interest in property is sufficient to invoke procedural due process, even if a claim to continued possession is in dispute. Fuentes, 407 U.S. at 86-87; Barrett, 189 F.3d at 301; Dixon v. Lowery, 302 F.3d 857, 864 (8th Cir. 2002).

Here, it is undisputed that the gate, trailer and incidental personal property belonged to plaintiff; that a prior state court judgment determined that the Property belonged to the Cowarts' predecessor; that plaintiff nonetheless continued to dispute the location of the non-exclusive access easement and had placed the gate and trailer on this disputed portion of property; that after the initial restraining order was lifted, plaintiff was given notice by the Cowarts that they would use self-help if the property was not removed within ten days of August 20, 1999; that on the tenth day plaintiff and his attorney went to state court for a temporary injunction to preclude this self-help; that the state court conducted a hearing on the day after the request for a

temporary injunction was filed, which was the day the Cowarts engaged in their self-help activities; and that the state court entered a temporary injunction preserving the status quo as of 12:30 p.m. August 31, 1999. Assuming sufficient state action was involved in these events to justify invocation of the procedural due process provision of the U.S. Constitution, it is clear that plaintiff received all the process which was due him. Plaintiff received notice from the Cowarts, was given a time limit, waited until the last day to file his state court motion, and was given a hearing in state court the next day. Accordingly, plaintiff's procedural due process rights were not violated.

(5) **Equal Protection**: The Fourteenth Amendment provides in part "nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Equal Protection Clause requires that similarly situated persons be treated alike. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). "The Equal Protection Clause requires that the government treat similarly situated persons in a similar manner." Gary v. City of Warner Robins, Ga., 311 F.3d 1334, 1337 (11th Cir. 2002).

Plaintiff has not identified a similarly situated group, or submitted any evidence showing dissimilar treatment in similar situations. Plaintiff is not a member of a suspect class and has not shown that defendant's acts were unrelated to a permissible government objective. Therefore, plaintiff has not established

that his constitutional right to equal protection was violated.
D'Aquanno v. Gallagher, 50 F.3d 877, 879 n.2 (11th Cir. 1995).

### C.

Former Sheriff McDougall asserts that even if a constitutional
right was violated, he is entitled to summary judgment based upon
qualified immunity.  The Sheriff (Scott) in his official capacity
asserts that he is entitled to summary judgment because there is no
evidence that a policy, custom or practice was the moving force
behind any violation of plaintiff's constitutional right.

**(1) Qualified Immunity:**

Plaintiff can only establish a constitutional claim against
the Sheriff in his individual capacity if the Sheriff is not
entitled to qualified immunity.  Mercado v. City of Orlando, 407
F.3d 1152, 1156 (11th Cir. 2005).  To be eligible for qualified
immunity, a defendant must first prove he was acting within the
scope of his discretionary authority when the allegedly wrongful
act occurred.  Id.; see also Wood v. Kesler, 323 F.3d 872, 877
(11th Cir. 2003).  If this is shown, the burden shifts to plaintiff
to show that qualified immunity is not appropriate.  Mercado, 407
F.3d at 1156; Wood, 323 F.3d at 877.

The Court conducts a two-part inquiry to determine whether
qualified immunity is appropriate.  Harris v. Coweta County, 406
F.3d 1307, 1313-14 (11th Cir. 2005); Garrett v. Athens-Clarke
County, 378 F.3d 1274, 1278-79 (11th Cir. 2004); Dahl v. Holley,

312 F.3d 1228, 1233 (11th Cir. 2003).  First, the court determines whether the summary judgment facts, viewed in a light most favorable to plaintiff, show that the officer's conduct violated a constitutional right.  Brosseau v. Haugen, 125 S.Ct. 596, 598 (2004); Hope v. Pelzer, 536 U.S. 730 (2002); Saucier v. Katz, 533 U.S. 194, 201 (2001).  The second inquiry is whether, at the time of the violation, the constitutional right was clearly established in light of the specific context of the case, not simply as a broad proposition.  Brosseau, 125 S.Ct. at 599-600; Dahl, 312 F.3d at 1233.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Brosseau, 125 S.Ct. at 599.

**(a) Discretionary Authority:**

In this case, there is no dispute that the Sheriff was acting within the scope of his discretionary authority at the time of his allegedly wrongful conduct.  Plaintiff affirmatively pled that the officers were acting within the scope of their authority as deputies (Doc. #39, ¶¶ 20, 34, 56, 58) and argues the same in his Response (Doc. #165) to the summary judgment motion.  Thus, the burden shifts to plaintiff to show that qualified immunity is not appropriate.

**(b) Violation of Constitutional Right:**

The first question is whether the alleged conduct violated an actual constitutional right.  As discussed above, the Court found that plaintiff's Fourth Amendment right was violated when the Sheriff ordered the trailer removed.


### (c) Clearly Established Constitutional Right:

Having found that the Sheriff's conduct violated plaintiff's Fourth Amendment right, the Court must determine whether, as of August 31, 1999, it was clearly established that the conduct of the Sheriff was unlawful under the circumstances in this case.  Given the circumstances of this case, including the Final Judgment in favor of the Cowarts, the continued dispute between Bevan and the Cowarts concerning the Property, the dissolution of the initial restraining order, the conduct of the participants in the events as depicted by both videotapes, the Court concludes that it was not clearly established that the Sheriff would violate the Fourth Amendment by directing that the trailer be towed away.  Thus, former Sheriff McDougall in his individual capacity is entitled to qualified immunity.[11]

### (2) Official Policy, Custom or Practice

---

[11]The remaining private party defendants did not plead qualified immunity as a defense.  (Docs. #104, 108).  In any event, it is doubtful that qualified immunity would apply to private parties in the context of this case.  Wyatt v. Cole, 504 U.S. 158 (1992).

Sheriff Scott asserts that there is no evidence that any allegedly wrongful conduct was performed pursuant to an official custom or policy of the Sheriff's Office.   Under § 1983, a governmental entity may not be held liable under a theory of *respondeat superior*, but instead may only be held liable when its "official policy" causes a constitutional violation.   Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978).  Plaintiff can establish the requisite "official policy" in one of two ways: (1) identifying an officially promulgated policy, or (2) identifying an unofficial custom or practice shown through the repeated acts of the final policymaker of the entity.   Grech v. Clayton County, Ga, 335 F.3d 1326, 1320-30 (11th Cir. 2003).   The policy or custom must be the moving force of the constitutional violation.   Grech, 335 F.3d at 1330; see also Board of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).[12]

The Affidavit of former Sheriff Shoap states that "[i]t is not the policy of the Lee County Sheriff's Office to get involved in determining the merits of the civil dispute."  (Doc. #142, ¶ 5).  The Affidavit further states that "it has been the policy of the Lee County Sheriff's Office to keep the peace in situations wherein citizens are repossessing property on their own, as such situations

---

[12]These principles also apply to the two private corporations named in the Section 1983 counts.   Buckner v. Toro, 116 F.3d 450 (11th Cir. 1997).

are potentially volatile." (Id.).   The Affidavits of the other deputies established that the Sheriff's Office policy is to not take sides in a civil dispute, but to be present to maintain the peace or to enforce court orders.   Plaintiff submits no evidence contradicting the stated policy.

Plaintiff responds that the Sheriff's Office has had a custom and policy of harassing him for over twenty-five years in retaliation for prevailing on appeal in a state court case.   (Doc. #165).   Plaintiff cites examples of alleged harassment unrelated to the type of incident on August 31, 1999.   Plaintiff has not sufficiently shown a policy related to the conduct in question, and the record is devoid of any evidence that the Sheriff made requests for tow truck removal in other similar situations as plaintiff's case.   The Court therefore concludes that Scott is entitled to summary judgment because plaintiff has not shown the required custom or policy of the Sheriff's Office.   Similarly, plaintiff has not shown a custom or policy with regard to Southwest Utilities or Whiskey Creek Service.

**D.**

In summary as to the Section 1983 claims, the Court finds as follows when the evidence is viewed in the light most favorable to plaintiff: The actions on August 31, 1999, involving the removal of the trailer were performed under the color of state law because there is evidence that the removal was ordered by the Sheriff; the prior and other actions that day were not performed under color of

state law; plaintiff's Fourth Amendment right, but no other, was violated by the removal of the trailer; the only persons or entities with potential liability for the unlawful seizure of the trailer are Richard Cowart, Sheriff Scott in his official capacity, former Sheriff McDougall in his individual capacity, and Chuck Fundermark.   Former Sheriff McDougall is entitled to qualified immunity; Sheriff Scott in his official capacity is entitled to judgment because plaintiff has not established that a custom or policy of the Sheriff's Office was the moving force of the constitutional violation.   Southwest Utilities and Chuck's Whiskey Service are entitled to summary judgment because there is no evidence that a custom or policy was the moving force of the constitutional policy.   Therefore, the Section 1983 claims only remain viable as to Richard Cowart and Chuck Fundermark.

## V.

Because the Court finds that a federal claim survives summary judgment, the Court now turns to the state claims.   Plaintiff's remaining state claims are as follows: (1) assault claim against the Cowarts, Southwest Utility, Fundermark, Chuck's Whiskey Creek, and the law enforcement defendants, except for Scott; (2) negligence claim against the non-law enforcement defendants; and (3) destruction of evidence against Mitar.

## A.   Count IV — Assault

Plaintiff alleges that defendants assaulted him and threatened him with physical arrest and violence if he attempted to interfere with the removal of his chattel from the Property.  (Doc. #89, ¶¶ 44-47).  Defendants deny that an assault occurred.

Under Florida law, "assault is defined as an intentional unlawful offer of corporal injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as to create a fear of imminent peril, coupled with the apparent present ability to effectuate the attempt."  <u>Lay v. Kremer</u>, 411 So. 2d 1347, 1349 (Fla. 1st DCA 1982).

**(1)  Law Enforcement Defendants**

McDougall, Erne, Durling, Hudnall, Bonsall, Di Pasquale, Durling, and Hamilton state that they did not threaten Brian Bevan with physical violence, and they did not see other officers threaten Brian Bevan.  (Doc. #142, Exhibits 1-5, 7-8).  In addition, they further assert that no one threatened to arrest Brian Bevan; rather they explained to Brian Bevan that he would be arrested if he committed violence against any individuals at the site.  (<u>Id</u>.).  In his affidavits, plaintiff asserts that the law enforcement defendants witnessed Richard Cowart "menacingly wield[] a machete directly in front of [the presence of Brian, Jane, and Lisa Bevan]."  (Docs. #181-82, 186-87).  Jane Bevan states the same in her affidavits.  (Docs. #206-08, 212).  Brian Bevan, also states that "[w]hile all this fear was being instilled into Brian Bevan, the Sheriff's Deputies, armed with loaded Glock Guns, continuously

-37-

threatened to arrest Brian, Jane and Lisa Bevan." (Docs. #181-82, 186-87). In light of the uncontroverted facts, the Court concludes that plaintiff has not established sufficient evidence of assault by the law enforcement defendants to satisfy the legal definition of an assault. Plaintiff's assault claim against these defendants cannot survive the summary judgment motion.

### (2) Non-law Enforcement Defendants

#### (a) Fundermark and Chuck's Whiskey Creek

Fundermark and Chuck's Whiskey Creek argue there are undisputed facts based on plaintiff's outstanding request for admission. Fundermark and Chuck's Whiskey Creek assert that they are entitled to summary judgment because plaintiff failed to deny that they "did not make use of physical threat or force upon the Plaintiff." (Doc. #146, p. 7). Plaintiff points out that Fundermark and Chuck's Whiskey Creek sent the request for admission to his former attorney, and consequently, plaintiff did not receive the request. Under the circumstances, the Court declines to treat the Request as admissions. However, the Court concludes that plaintiff has not pointed to facts which would establish the elements of assault as to either Fundermark or Chuck's Whiskey Creek. The Court will grant the summary judgment motion as to Count IV with respect to Fundermark and Chuck's Whiskey Creek.

#### (b) Cowarts and Southwest Utility

Plaintiff asserts that Richard Cowart and Southwest Utility's employees "raced a huge bulldozer down the Bevan's narrow private lane in a menacing manner toward the Bevan family." (Docs. #181-82, 186-87). Plaintiff also asserts that Richard Cowart made "an unlawful offer of corporal injury to Brian, Jane and Lisa Bevan when Richard Travis Cowart menacingly wielded a machete directly in front of their presence." (Id.). Plaintiff further states that "[t]he action of Richard Travis Cowart created a fear of imminent peril and I, Brian Bevan, had a reasonable apprehension of imminent harmful and offensive contact, because of Richard Travis Cowart's apparent ability to effectuate the assault." (Docs. #181-82, 186-87). In addition, plaintiff states that Claudia Cowart "arranged for a bulldozer owned by her corporation and her Employees to . . . assault the Bevan Family." (Doc. #185). Richard Cowart denies any assault was made on Brian Bevan. (Doc. #161, Exhibit E, ¶¶ 9-10). Claudia Cowart states the same in her affidavit. (Doc. #161, Exhibit D, ¶¶ 8-9).

The Court finds that there are disputed material facts as to Richard Cowart which cause the claim to survive a motion for summary judgment. The Court concludes that the facts viewed in the light most favorable to plaintiff do not satisfy the elements of an assault claim as to Claudia Cowart and Southwest Utility, and therefore the Court will grant summary judgment as to Claudia Cowart and Southwest Utility.

**B.   Count VI - Negligence**

According to the Amended Complaint, plaintiff alleges that the non-law enforcement defendants negligently removed his chattel from the Property and damaged or destroyed the chattel as a result. (Doc. #89, ¶¶ 52-55).   Under Florida law, "[n]egligence is the failure to observe for the protection of another's interest such care, precaution and vigilance as the circumstances justly demand whereby injury is done to such a person, or, in another form, negligence is the failure to do what a reasonable and prudent person would ordinarily have done, or the doing of what such a person would have done under the situation whereby injury is done to another." Russ v. State, 140 Fla. 217, 219-20 (Fla. 1939); see also Hiram Walker & Sons, Inc. v. Kirk Line, 877 F.2d 1508, 1515 (11th Cir. 1989).

The Cowarts and Southwest Utility argue that they are entitled to summary judgment as to the negligence claim because plaintiff fails to establish a prima facie case for negligence.   They contend that the undisputed facts show that neither the Cowarts nor Southwest Utility owed plaintiff a duty of care.   Plaintiff does not address this argument in his Response.

Under Florida law, "a threshold issue in negligence is whether the defendant owed any duty to a plaintiff." Department of Envtl. Prot. v. Hardy, __ So. 2d __, No. 5D04-860, 2005 WL 1787444, at *3 (Fla. 5th DCA July 29, 2005) (quoting Robert-Blier v. Statewide Enter., Inc., 890 So. 2d 522, 523 (Fla. 4th DCA 2005)).   Moreover,

"[i]t is a question of law whether any duty in tort exists."
McCain v. Florida Power Corp., 593 So. 2d 500, 503 (Fla. 1992). "A
duty may arise from multiple sources: (1) legislative enactments or
administration regulations; (2) judicial interpretations of such
enactments or regulations; (3) other judicial precedent; and (4) a
duty arising from the general facts of the case. Clay Elec.
Co-op., Inc. v. Johnson, 873 So. 2d 1182, 1185 (Fla. 2003).

The Court concludes that the present case does not fall under
any of the categories. The Amended Complaint purports to allege a
negligence claim; however, plaintiff fails to establish any facts
to show that the non-law enforcement defendants owed a duty to him.
The Court concludes that summary judgment should be granted in
favor of the non-law enforcement defendants as to Count VI.

**C.   Count VIII Against Mitar**

There is no factual evidence submitted by plaintiff which
supports the claim for destruction of evidence as to defendant
Mitar. Thus, the Court grants summary judgment in favor of Mitar
with respect to Count VIII.

**VI.**

The Court now turns to plaintiff's Motion for Summary Judgment
wherein he contends that he is entitled to summary judgment. For
the most part, plaintiff's contentions in his summary judgment are
similar to the arguments made in his response to the defendants'
cross-summary judgment motions. Plaintiff, however, specifically

focuses on the his unreasonable seizure, takings, and assault claims.   For the reasons stated above, the Court finds that plaintiff is not entitled to judgment on his unreasonable seizure or takings claim.

Accordingly, it is now

**ORDERED**:

1.   Defendants Claudia Cowart's and Richard Cowart's Motion for Summary Judgment (Doc. #161) is **GRANTED in part and DENIED in part** for the reasons stated above.

2.   Defendants Fundermark's and Chuck's Whiskey's Motion for Summary Judgment(Doc. #146) is **GRANTED in part and DENIED in part**. for the reasons stated above.

3.    The Lee County Sheriff Defendants' Motion for Summary Judgment (Doc. #142) is **GRANTED** for the reasons stated above.

4.  Plaintiff' Motion for Summary Judgment (Doc. #147) and Memorandum of Law (Doc. #148) is **DENIED** for the reasons stated above.

5.  Judgment is granted in favor of all defendants and against plaintiff as to Count I; in favor of all defendants and against plaintiff as to Count II, except as to Richard Travis Cowart as it relates to the claim of a violation of the Fourth Amendment to the United States Constitution for the seizure of the trailer; in favor of all defendants and against plaintiff as to Count III, except as to Chuck Fundermark as it relates to the claim of a violation of

the Fourth Amendment to the United States Constitution for the seizure of the trailer; in favor of all defendants and against plaintiff as to Count IV, except as to Richard Travis Cowart; in favor of all defendants and against plaintiff as to Count V; in favor of all defendants and against plaintiff as to Count VI; in favor of all defendants and against plaintiff as to Count VII; and in favor of defendant and against plaintiff as to Count VIII. The Clerk shall withhold the entry of judgment until the conclusion of the case.

**DONE AND ORDERED** at Fort Myers, Florida, this ___13th___ day of September, 2005.


                                            JOHN E. STEELE
                                            United States District Judge